ACCEPTED
13-14-00059-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/8/2015 4:25:56 PM
Dorian E. Ramirez
CLERK

## NO. 13-14-00059-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/8/2015 4:25:56 PM
DORIAN E. RAMIREZ
Clerk

## MONICA GALVAN,
## APPELLANT,

## VS.

## THE STATE OF TEXAS,
## APPELLEE.

ON APPEAL FROM THE 347TH DISTRICT COURT
NUECES COUNTY, TEXAS
TRIAL COURT NUMBER 11-CR-3519-H

## BRIEF FOR THE STATE

Adolfo Aguilo, Jr.
State Bar No. 00936750
Assistant District Attorney
105th Judicial District of Texas
901 Leopards, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
adolfo.aguilo@co.nueces.tx.us
Attorney for Appellee

## ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................... iii

STATEMENT OF FACTS ..................................................................2

Indictment ....................................................................................2

State's Case ..................................................................................3

Appellant's Case ........................................................................ 12

SUMMARY OF THE ARGUMENT ....................................... 15

1. <u>Reply to Appellant's Issues Nos. 1 & 2</u>: Viewed under the appropriate standard of review, the evidence is sufficient to prove that Appellant recklessly caused serious bodily injury to the victims.
2. <u>Reply to Appellant's Issues Nos. 3 & 4</u>: The evidence is sufficient to prove that Appellant collided with a bulldozer. Additionally, any variance between the alleged manner and means and the proof is immaterial.
3. <u>Reply to Appellant's Issue No. 5</u>: No error is shown because a jury need not be unanimous about a specific manner and means of how an offense was committed.

ARGUMENT ............................................................................... 15

1. <u>Reply to Appellant's Issues Nos. 1 & 2</u>........................................ 15

*Standard of Review and Applicable Law*..................................... 15

*Discussion* ................................................................................ 20

2. <u>Reply to Appellant's Issues Nos. 3 & 4</u>...................................... 25

*Standard of Review and Applicable Law*..................................... 26

*Discussion* ................................................................................ 28

3. <u>Reply to Appellant's Issue No. 5</u>............................................... 29

*Standard of Review and Applicable Law*..................................................... 30

*Discussion* ......................................................................................... 31

PRAYER.............................................................................................. 33

RULE 9.4 CERTIFICATE OF COMPLIANCE ........................................ 33

CERTIFICATE OF SERVICE ................................................................ 34

## INDEX OF AUTHORITIES
### Cases

*Acosta v. State*, 429 SW3d 621
(Tex. Crim. App. 2014) ............................................................................. 18

*Anderson v. State*, 416 SW3d 884
(Tex. Crim. App. 2013) ............................................................................. 17

*Clayton v. State*, 235 SW3d 772
(Tex. Crim. App. 2007) ............................................................................. 17

*Elliott v. State*, No. 13-13-00220-CR, 2015 WL 1869472
(Tex. App.-Corpus Christi Apr. 23, 2015, no pet. h.) (not designated for
publication) .................................................................. 18, 19, 20, 23, 24, 25

*Estrada v. State*, 313 SW3d 274
(Tex. Crim. App. 2010) ............................................................................. 31

*Desormeaux v. State*, 362 SW3d 233
(Tex. App.-Beaumont 2012, no pet.)........................................................... 19

*Ex parte Castillo*, No. PD-0545-14, 2015 WL 3486960
(Tex. Crim. App. June 3, 2015) ......................................................... 29 n.6

*Fritzching v. State*, No. 02-10-00431-CR, 2012 WL 1222033
(Tex. App.-Fort Worth Apr. 12, 2012, pet. ref'd) (mem. op., not designated
for publication)....................................................................................... 28

*Gear v. State*, 340 SW3d 743
(Tex. Crim. App. 2011) ............................................................... 16

*Gollihar v. State*, 46 SW3d 243
(Tex. Crim. App. 2001) ....................................... 26, 27, 29 n.6

*Guevara v. State*, 152 SW3d 45
(Tex. Crim. App. 2004) ............................................................... 20

*Hacker v. State*, 389 SW3d 860
(Tex. Crim. App. 2013) ............................................................... 20

*Henry v. State*, No. 10-11-00443-CR, 2012 WL 2445048
(Tex. App.-Waco June 27, 2012, no pet.) (mem. op., not designated for publication) ...................................................................... 29 n.6

*Hernandez v. State*, 190 SW3d 856
(Tex. App.-Corpus Christi 2006, no pet.) ................................... 16

*Hooper v. State*, 214 SW3d 9
(Tex. Crim. App. 2007) ............................................................... 17

*Hyde v. State*, 846 SW2d 503
(Tex. App.-Corpus Christi 1993, pet. ref'd) .......................... 19, 20

*Jackson v. Virginia*, 443 U.S. 307
(1979) .................................................................................... 16, 17

*Johnson v. State*, 364 SW3d 292
(Tex. Crim. App. 2012) .......................................................... 27, 28

*Jourdan v. State*, 428 SW3d 86
(Tex. Crim. App. 2014) ............................................................... 31

*Kitchens v. State*, 823 SW2d 256
(Tex. Crim. App. 1991) .......................................................... 30, 31

*Landrian v. State*, 268 SW3d 532
(Tex. Crim. App. 2008) .......................................................... 30, 32

*Laster v. State*, 275 SW3d 512
(Tex. Crim. App. 2009) .................................................................... 17

*Ledesma v. State*, 677 SW2d 529
(Tex. Crim. App. 1984) .................................................................... 19

*Lopez v. State*, 884 SW2d 918
(Tex. App.-Austin 1994, pet. ref'd) ............................................... 16

*Malik v. State*, 953 SW2d 234
(Tex. Crim. App. 1997) ............................................................. 18, 26

*Marinos v. State*, 186 SW3d 167
(Tex. App.-Austin 2006, pet. ref'd) ................................... 30, 31, 32

*Merritt v. State*, 368 SW3d 516
(Tex. Crim. App. 2012) .................................................................... 18

*Ngo v. State*, 175 SW3d 738
(Tex. Crim. App. 2005) ................................... 28 n.5, 29, 30, 31, 32

*Reyes v. State*, 267 SW3d 268
(Tex. App.-Corpus Christi 2008, pet. ref'd) ........................... 16, 20

*Rubio v. State*, 203 SW3d 448
(Tex. App.-El Paso 2006, pet. ref'd) ............................................. 24

*Saenz v. State*, 451 SW3d 388
(Tex. Crim. App. 2014) .................................................................... 31

*Temple v. State*, 390 SW3d 341
(Tex. Crim. App. 2013) ............................................................. 16, 20

*Trepanier v. State*, 940 SW2d 827
(Tex. App.-Austin 1997, pet. ref'd) ......................................... 23, 25

*Ventura-Salmeron v. State*, No. 03-98-00470-CR, 2000 WL 140906
(Tex. App.-Austin Feb. 3, 2000, pet. ref'd) (not designated for publication)25

*Wesbrook v. State*, 29 SW3d 103

(Tex. Crim. App. 2000) ............................................................ 20

*Whatley v. State*, 445 SW3d 159
(Tex. Crim. App. 2014) ............................................................ 16

*Young v. State*, 341 SW3d 417
(Tex. Crim. App. 2011) ............................................................ 32

*Zuniga v. State*, 144 SW3d 477
(Tex. Crim. App. 2004), *overruled on other grounds by Watson v. State*, 204
SW3d 404 (Tex. Crim. App. 2006) ........................................... 24

## Statutes and Rules

Tex. Penal Code § 6.03(c) ........................................................ 18

Tex. Penal Code § 19.04(a) ................................................. 20 n.4

Tex. Penal Code § 22.01(a)(1) ................................................. 18

Tex. Penal Code § 22.02(a)(1) ......................................... 1 n.2, 18

Tex. Penal Code § 49.07(a)(1) ............................................ 1 n.1

Tex. R. App. P. 33.1(a) ............................................................ 31

No.13-14-00059-CR

MONICA GALVAN, Appellant,
V.
THE STATE OF TEXAS, Appellee.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN THE COURT OF APPEALS
FOR THE
THIRTEENTH DISTRICT OF TEXAS

**BRIEF FOR THE STATE**
TO THE HONORABLE COURT OF APPEALS:

Appellant was charged by indictment with two counts of intoxication assault[1] and two counts of aggravated assault.[2] C.R. at 3-4. A jury acquitted Appellant of the intoxication assault offenses and convicted her of the aggravated assault offenses. C.R. at 1255-1258. After a jury convicted Appellant of the aggravated assault offenses, it assessed her punishment at 5 years in the penitentiary and a fine of $2,500 for each offense. It also recommended that the punishment of imprisonment be suspended and that Appellant be placed on community supervision for each offense. C.R. at 1269-1270. The trial judge subsequently placed Appellant on community supervision for five years. C.R. at 1271.

---

[1] *See* Tex. Penal Code § 49.07(a)(1).
[2] *See* Tex. Penal Code § 22.02(a)(1).

Appellant now presents two issues challenging the sufficiency of the evidence, two issues complaining of an alleged variance, and one issue complaining of a lack of jury unanimity.

## Statement of Facts

### Indictment

Count 1 of the indictment alleged that Appellant, on or about October 15, 2011, in Nueces County, Texas, did then and there operate a motor vehicle in a public place while intoxicated by reason of the introduction of alcohol into the body, and did by reason of such intoxication cause serious bodily injury to another, namely, Joseph Salinas, by accident or mistake, to wit: by driving a motor vehicle that was occupied by Joseph Salinas into and against a bulldozer. C.R. at 3.

Except for alleging that Christopher Manka was the victim, Count 2 of the indictment was identical to Count 1. C.R. at 4.

Count 3 of the indictment alleged that Appellant, on or about October 15, 2011, in Nueces County, Texas, did then and there recklessly, to wit: by failing to control the motor vehicle operated by Appellant, and by failing to keep a proper lookout for another vehicle, and by failing to keep the motor vehicle operated by Appellant on the roadway, and by operating a motor vehicle while impaired, cause serious bodily injury to Joseph Salinas by

driving a motor vehicle that was occupied by Joseph Salinas into and against a bulldozer. C.R. at 4.

Except for alleging that Christopher Manka was the victim, Count 4 of the indictment was identical to Count 3. C.R. at 4.

State's Case

On October 15, 2011 at 11:22 p.m., **Officer Ruben Ramirez** responded to a call regarding a "major traffic accident." 3 R.R. at 17 & 56. He parked his patrol car on the side of the highway and walked through a lot of shrubbery to reach Appellant's vehicle. 3 R.R. at 19-20. He observed Appellant and Martina Cepeda tending to a male in the vehicle. He also saw someone lying on the ground. 3 R.R. at 20. Ramirez observed "a lot of blood" on the male in the vehicle. 3 R.R. at 22.

Christopher Manka was the male in the front passenger seat of the vehicle. 3 R.R. at 25. Joseph Salinas was the person lying on the ground. 3 R.R. at 25-26.

Ramirez testified that Appellant "was in control of the situation but she was kind of dazed." 3 R.R. at 22. Ramirez also smelled alcohol on her breath. 3 R.R. at 24. Her clothing was "disarranged" and her speech was "thick tongued" like she had a "cotton mouth." 3 R.R. at 53. Appellant advised him that after having three beers and a "bull blaster shot" at a bar on Padre Island,

3

she stopped at a Whataburger to get something to eat. As she was coming into Flour Bluff, "somebody veered out in front of her and she avoided it, over corrected, and ultimately crashed into this bulldozer." 3 R.R. at 23 & 54-55. Ramirez was later advised by Cepeda that there was no oncoming car. 3 R.R. at 23.

Cepeda also told Ramirez that Appellant had exited her vehicle and thrown away some beer bottles that were inside her vehicle. Appellant threw them in back of the bulldozer that she struck. 3 R.R. at 48-49. Appellant actually placed the bottles in a "container" that was attached to the bulldozer. The container was "pretty high" off the ground. When Ramirez pulled himself up, he was able to observe some broken bottles. 3 R.R. at 50. If Cepeda had not told him about the bottles, he would never have known about them. 3 R.R. at 51.

After Ramirez and his lieutenant examined the scene, they determined that Appellant drove straight off the roadway and never veered. Instead of turning with the roadway, she continued going straight. 3 R.R. at 24.

Appellant was then transported to a hospital to obtain a blood draw. 3 R.R. at 25. Her blood was drawn at 1:42 a.m. 3 R.R. at 56. Ramirez explained that field sobriety tests are not administered to people involved in accidents. 3 R.R. at 52-53.

4

Based upon all of the information that he had, Ramirez believed Appellant was intoxicated. 3 R.R. at 26-27.

During cross-examination, when Ramirez was asked why he described the scene as "chaotic," he replied, "People lying on the ground, complaining of injuries, somebody laying in blood and a lot of people trying to focus on them, damage to vehicle that was heavy front end. It was not an average accident. She had crashed into a bulldozer which never happens. I've never seen that before in my ten years." 3 R.R. at 32.

**Officer Paul Janko** testified that Appellant's vehicle, a four-door Pontiac, was approximately 1000 feet off the roadway when he arrived at the scene. 3 R.R. at 67 & 74. According to Janko, Appellant's vehicle was traveling "highway speed" when "something happened in the vehicle or the vehicle lost control" and crashed. 3 R.R. at 71.

**Officer Marc Harrod** transported Appellant's blood sample to the Department of Public Safety laboratory. 3 R.R. at 83. He also testified that the evidence room at the police department where Appellant's blood was stored is not refrigerated. It is also not required to be refrigerated. 5 R.R. at 30.

**Joseph Salinas** testified that he knew Appellant through Christopher Manka, his best friend. 4 R.R. at 11. Prior to October 15, 2011, he had spent

time with Appellant a "handful" or a "couple" of times. 4 R.R. at 12. According to Salinas, Appellant was not a "heavy drinker." 4 R.R. at 14.

On October 15, 2011, Appellant and Manka came to his residence at 9:00 p.m. They stayed at his apartment for a "little bit" and then went to the Pelican Lounge. 4 R.R. at 15-16. According to Salinas, they did not drink any alcoholic beverages at his apartment. 4 R.R. at 17.

Appellant was driving her vehicle, Manka was the front passenger, and Salinas sat on the passenger side of the rear seat. They stopped at a convenience store to get a six-pack of Bud Light. Appellant or Manka bought the beer. 4 R.R. at 17-18. The beer was supposed to be "for the guys." 4 R.R. at 25.

They arrived at the Pelican Lounge at around 10:00 or 10:15 p.m. and stayed there for 45 minutes or an hour. He had two drinks. 4 R.R. at 19. Appellant "did not have no more than two drinks." Salinas explained that he would not get in the car with a drunk driver. 4 R.R. at 20. When the prosecutor asked Salinas what Manka drank, Salinas replied, "I did not pay attention to those insignificant details." 4 R.R. at 21.

They left the bar around 11:00 or 11:15 p.m. and went across the street to a Whataburger. 4 R.R. at 21. After they went through the drive-thru, they

spent about 20 or 30 minutes in the parking lot while Appellant ate. 4 R.R. at 22-23. They then headed to Manka's apartment. 4 R.R. at 24.

On the way back to Manka's apartment, there was what Salinas initially referred to as "a little bit of a disagreement" between Appellant and Manka. At that point, Salinas "just wanted to get home." Salinas then referred to the disagreement as an "argument." 4 R.R. at 26.

At one point, Appellant "tapped" Manka "a couple of times" to get him to shut up. 4 R.R. at 27. Salinas testified that the wreck occurred a minute or a couple of minutes after the tapping. 4 R.R. at 27-28. Later, when the prosecutor asked him if he recalled previously telling her that the wreck occurred "seconds" after the tapping, Salinas replied, "Couple of seconds, maybe a minute." 4 R.R. at 96-97.

Salinas told the police that Appellant struck Manka's shoulder three times with her right hand. She was "using her right hand like 'shut up already.'" 4 R.R. at 33.

Salinas did not recall Appellant's vehicle swerving or any oncoming vehicle prior to the wreck. He testified that he was "not paying attention outside the vehicle." 4 R.R. at 28.

After the wreck, Salinas crawled out of the vehicle. He sustained a "posterior dislocation." In other words, his hip dislocated and went into his rectum. 4 R.R. at 29. He underwent two surgeries. 4 R.R. at 30.

**Christopher Manka** married Appellant three weeks before the trial. Prior to their marriage, they had known each other for 13 years. 4 R.R. at 42-43.

In October of 2011, they were "just getting back together" after taking a "break" for about six months. On October 15, 2011, they had been back together for a couple of days or a couple of weeks. 4 R.R. at 43. They had just started talking again. 4 R.R. at 55. During the six months they stopped seeing each other, they had both dated other people. 4 R.R. at 59. When Manka was asked if that created hardship in their relationship when they were getting back together, he replied, "There is going to be pain there because we were together ten years and then to see the person you love with someone else; me with someone else, there is going to be pain there." 4 R.R. at 60. Appellant and Manka had arguments about the people they dated while they were separated. 4 R.R. at 61. One of the women he had dated came to visit him at the hospital while he was recuperating and caused trouble. 4 R.R. at 60.

In the thirteen years Manka had known her, he had never seen Appellant drink more than three drinks. She would not drink "very often at all." 4 R.R. at 44.

Manka testified that did not recall much of what occurred on October 15, 2011. He suffered a cracked skull and a swollen brain as a result of the wreck. 4 R.R. at 46. He also sustained 27 broken bones. 4 R.R. at 55.

Manka did not recall what they had to drink at the bar. 4 R.R. at 49. He also did not recall having an argument with Appellant. 4 R.R. at 51. He did remember that they bought the six-pack so they could have "two beers a piece" at his house. 4 R.R. at 52. Appellant later told him that she had two drinks that evening. 4 R.R. at 56.

The last thing he remembered seeing were "headlights right next to the vehicle and just losing control." Appellant's vehicle did a "fast twitch" before going off the roadway. 4 R.R. at 56. He saw a light and what appeared to be a hood before they went "straight into the bulldozer." 4 R.R. at 57.

**Emily Bonvino**, a forensic scientist with the Department of Public Safety, testified that Appellant's blood sample contained .08 grams of alcohol per 100 milliliters of blood. 4 R.R. at 74. Bonvino explained that alcohol consumption may affect vision. 4 R.R. at 75. She also explained that at the time Appellant's blood sample was drawn, her alcohol level was on the way

down or in the elimination phase. 4 R.R. at 77-78. It was also her opinion that at the time of the collision, Appellant's blood alcohol level would have been anywhere between .10 and .15. 4 R.R. at 98-99 & 104-105. Also, in her experience, storage of the blood sample causes the blood alcohol level to decrease due to the evaporation of ethanol. 4 R.R. at 78.

**Officer David Lee Connor** testified that he had received training in accident reconstruction and crash data retrieval investigation. 4 R.R. at 106-107. Appellant's vehicle, a 2006 Pontiac Torrent, an SUV, had a data recorder. 4 R.R. at 107. The data he reviewed indicated that Appellant had her seatbelt buckled and Manka did not have his seatbelt buckled. 4 R.R. at 11.

Five seconds prior to the crash, Appellant was going 58 miles per hour. 4 R.R. at 111. One second before the crash she was going 47 miles per hour. 4 R.R. at 112. Connor explained that the higher the change in velocity upon impact, the greater the likelihood of more damage and more severe injury. Appellant's vehicle "lost 43 miles an hour almost immediately." 4 R.R. at 113. And for the eight seconds prior to the crash, her brakes were not depressed. 4 R.R. at 114.

**Martina Cepeda**, a teacher with the Corpus Christi Independent School District, was returning from her 40th high school reunion when she noticed Appellant's vehicle in front of her. 5 R.R. at 6-7. She initially saw

Appellant's vehicle "swerving a little bit." After she slowed down and backed off a little bit, Appellant's vehicle started "fishtailing." 5 R.R. at 7. She testified Appellant's vehicle "was going from side to side really drastically and then all of a sudden it ended up in a position where it was across the lane rather than the way we were headed. Suddenly they accelerated and ran into the tractor on the side." 5 R.R. at 8. There were no other vehicles on the road at the time of the collision. 5 R.R. at 12.

Appellant initially got out of the vehicle and attempted to "rouse the passenger." 5 R.R. at 8-9. Cepeda was "right next" to Appellant while Appellant was attempting to awaken Manka. Appellant then "ran around the back of the vehicle and started doing something in the vehicle." She then saw Appellant come out of the vehicle and throw a bag into the tractor that was next to the vehicle. 5 R.R. at 10. "It sounded like glass." 5 R.R. at 11.

Cepeda could smell alcohol on Appellant's breath while she was standing next to her. 5 R.R. at 11.

During cross-examination, when she was asked to define "fishtailing," Cepeda said, "The back part of the car started going drastically from one side to the other." 5 R.R. at 12. She never saw Appellant's break lights prior to the collision. 5 R.R. at 13. She also testified that she had one glass of wine at the reunion. 5 R.R. at 14.

After Cepeda responded to the first letter from Appellant's trial counsel,[3] she did not respond to any of his other letters because she found his tone "very rude." 5 R.R. at 26 & 28.

Appellant's Case

**Gary Harold Wimbish** testified that he was board certified in forensic toxicology. 4 R.R. at 119. He was paid to review Appellant's blood analysis. 4 R.R. at 127. Appellant's blood sample was tested at another laboratory. 4 R.R. at 129. The toxicology results of the second analysis indicated a blood alcohol concentration of .06 grams of alcohol per 100 milliliters of blood. 4 R.R. at 143.

According to Wimbish, the instrument used to analyze Appellant's blood at the Department of Public Safety laboratory was calibrated but not validated. 4 R.R. at 135. He nonetheless acknowledged that the two results "are close." 4 R.R. at 133.

He did not believe that evaporation would have any effects on the results of an analysis. 4 R.R. at 150. He also testified that trauma slows the absorption of alcohol into the body. 4 R.R. at 153-154.

It was his opinion that Appellant was not intoxicated at the time of the collision. 4 R.R. at 158.

---

[3] She was referring to Rene Rodriguez. Appellant was also represented by Terry Shamsie. 5 R.R. at 2 & 12.

During cross-examination, Wimbish acknowledged that he had previously testified that people become intoxicated with a blood alcohol content of .05. 4 R.R. at 171-172. He also noted that the American Medical Association "would like that number to be .05." 4 R.R. at 172.

It was also his opinion that naïve drinkers are more susceptible to the effects of alcohol. Thus, they may become intoxicated at a value below .08. 4 R.R. at 164-165. "Individuals who have constitutional sensitivity can be impaired at low blood alcohol concentrations." 4 R.R. at 183.

It was his general understanding and personal observation that the consumption of alcohol may intensify angry feelings. 4 R.R. at 179 & 181. He also testified that alcohol can change the mood of a person. 4 R.R. at 180. It can also affect judgment. 4 R.R. at 181.

When Wimbish was asked if his confidence in the .06 value would change if Appellant's blood sample had been stored at a location that was not refrigerated, he replied, "Any value found in that sample would be unacceptable forensically." 4 R.R. at 185.

**Appellant** testified that she could not remember everything "step by step." 5 R.R. at 46. She did remember that she stopped at an Exxon to get a six-pack on the way to Pelican's Lounge. 5 R.R. at 48. They stayed at the bar for about an hour. She initially testified that she had "two to three drinks of

Michelob Ultra." She did not know what a "Bull Blaster" is. 5 R.R. at 49. She testified that she rarely drinks. 5 R.R. at 50.

When asked to explain what happened right before the accident, Appellant said, "As soon as I was driving, we were talking and then all of a sudden I see a car not with lights coming towards me on my lane. My first reaction was to veer, to get off the road because I was trying to get control and I ended up hitting the side of a construction piece." She then said that she actually "press[ed] the breaks" before she veered. 4 R.R. at 51.

According to Appellant, the bag with the six-pack was underneath Manka's legs. 5 R.R. at 52. She testified that she threw the bag away because she was concerned that Manka would be injured when she attempted to get him out of the vehicle. 5 R.R. at 53.

Appellant testified that she was going 60 or 65 miles per hour before the collision. She denied that the vehicle was swerving or fishtailing before the collision. 5 R.R. at 56.

During cross-examination, she testified that she might have had two or three beers at the bar. 5 R.R. at 63-64. She denied telling Officer Ramirez that she drank a Bull Blaster shot. 5 R.R. at 64-65.

14

**David Torres**, a private investigator, testified that he went to Cepeda's house five times while unsuccessfully attempting to contact her. He left his card on two occasions. 5 R.R. at 69.

## Summary of the Argument

1. Reply to Appellant's Issues Nos. 1 & 2: Viewed under the appropriate standard of review, the evidence is sufficient to prove that Appellant recklessly caused serious bodily injury to the victims.
2. Reply to Appellant's Issues Nos. 3 & 4: The evidence is sufficient to prove that Appellant collided with a bulldozer. Additionally, any variance between the alleged manner and means and the proof is immaterial.
3. Reply to Appellant's Issue No. 5: No error is shown because a jury need not be unanimous about a specific manner and means of how an offense was committed.

## Argument

1. Reply to Appellant's Issues Nos. 1 & 2:

In her first and second issues, Appellant contends the evidence is legally insufficient to sustain her conviction. Appellant's Brief at 11. Specifically, Appellant contends that the evidence is legally insufficient to prove that she acted recklessly. Appellant's Brief at 22.

Appellant makes her argument by ignoring the applicable standard of review and the evidence.

*Standard of Review and Applicable Law*

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must  consider all of the evidence in the light

15

most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Whatley v. State*, 445 SW3d 159, 166 (Tex. Crim. App. 2014) (quoting *Gear v. State*, 340 SW3d 743, 746 (Tex. Crim. App. 2011)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The court on appeal does not engage in a second evaluation of the weight and credibility of the evidence, but only ensures the jury reached a rational decision." *Reyes v. State*, 267 SW3d 268, 275 (Tex. App.-Corpus Christi 2008, pet. ref'd). "Further, it is not the State's burden to exclude every conceivable alternative to a defendant's guilt." *Temple v. State*, 390 SW3d 341, 363 (Tex. Crim. App. 2013).

Inferences may - and often must - be used to prove the elements of an offense. *Hernandez v. State*, 190 SW3d 856, 865 (Tex. App.-Corpus Christi 2006, no pet.); *Lopez v. State*, 884 SW2d 918, 921 (Tex. App.-Austin 1994, pet. ref'd). Juries are permitted to draw multiple reasonable inferences from the evidence (direct or circumstantial) as long as each inference is supported by the evidence presented at trial, but they are not permitted to draw

16

conclusions based on speculation. *Anderson v. State*, 416 SW3d 884, 888 (Tex. Crim. App. 2013); *Hooper v. State*, 214 SW3d 9, 16 (Tex. Crim. App. 2007). When faced with a record of historical facts that supports conflicting inferences, a reviewing court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. "As long as the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster v. State*, 275 SW3d 512, 523 (Tex. Crim. App. 2009).

In analyzing legal sufficiency, a reviewing court must consider all of the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or defense. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 SW3d 772, 778 (Tex. Crim. App. 2007).

> Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. In such cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all of the incriminating circumstances. Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence.

*Acosta v. State*, 429 SW3d 621, 625 (Tex. Crim. App. 2014) (quotation marks and footnotes omitted). Because all of the evidence – both direct and circumstantial – must be evaluated as a whole by the reviewing court, it is not appropriate to consider evidence myopically or to point out problems with the individual, separate facts underlying the State's case. *Id.* at 631; *see also Merritt v. State*, 368 SW3d 516, 526 (Tex. Crim. App. 2012) (disapproving of a "divide-and-conquer" approach when reviewing the sufficiency of the evidence).

The legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 SW2d 234, 240 (Tex. Crim. App. 1997). A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code § 22.01(a)(1). A person commits the offense of aggravated assault if the person commits assault as defined in Section 22.01 and the person causes serious bodily injury to another. Tex. Penal Code § 22.02(a)(1).

A person acts recklessly with respect to the result of her conduct when she is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur. Tex. Penal Code § 6.03(c); *Elliott v. State*, No. 13-13-00220-CR, 2015 WL 1869472, at *3 (Tex. App.-Corpus Christi Apr. 23,

2015, no pet. h.) (not designated for publication). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint. *Id.* "Recklessness can be applied generally to the act of driving." *Id.*

Anticipating variances in the proof, the State may plead alternative "manner and means." *Desormeaux v. State*, 362 SW3d 233, 239 (Tex. App.-Beaumont 2012, no pet.). However, the State is not required to prove guilt under all the theories alleged. *Id.* "Proof of guilt under one theory of the offense will suffice for conviction." *Id.*

"Absent a judicial confession, the requisite culpable mental state must ordinarily be inferred from the acts of the accused or the surrounding circumstances." *Ledesma v. State*, 677 SW2d 529, 531 (Tex. Crim. App. 1984); *see also Elliott*, 2015 WL 1869472, at *3 (proof of a culpable mental state generally relies on circumstantial evidence).

"A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence." *Hyde v. State*, 846 SW2d 503, 505 (Tex. App.-Corpus Christi 1993, pet. ref'd). "It is consequently a well accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt,' may be received as a

circumstance tending to prove that he committed the act with which he is charged." *Id.* "Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are . . . circumstances of guilt." *Guevara*, 152 SW3d 45, 50 (Tex. Crim. App. 2004); *see also Hacker v. State*, 389 SW3d 860, 871 (Tex. Crim. App. 2013) ("The destruction, suppression or fabrication of evidence undoubtedly gives rise to a presumption of guilt to be dealt with by the jury."); *Elliott*, 2015 WL 1869472, at *4 (jury could have inferred appellant's recklessness from her conduct after the accident that demonstrated her consciousness of guilt).

### *Discussion*

While Appellant acknowledges that this Court is required to view the evidence in the light most favorable to the verdict, Appellant's Brief at 23, his Statement of Facts and his argument ignore that requirement. Appellant's Brief at 5-11, 12-22 & 30-33. As this Court noted in *Elliott*, a vehicular manslaughter case,[4] the jury is the "exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." 2015 WL 1869472, at *2 (quoting *Wesbrook v. State*, 29 SW3d 103, 111 (Tex. Crim.

---

[4] A person commits the offense of manslaughter if he recklessly causes the death of an individual. Tex. Penal Code § 19.04(a).

20

App. 2000)). An appellant may not attempt to rehash weight and credibility issues on appeal. *Temple v. State*, 390 SW3d at 363; *Reyes*, 267 SW3d at 275.

Besides looking at the evidence in the light most favorable to her, Appellant also misstates the evidence. For example, she contends that the highest speed she was recorded driving was 58 miles per hour on an open stretch of roadway. Appellant's Brief at 31. Actually, Officer Connor testified that the data recorder he examined could only record up to five seconds of pre-crash data. So he testified that five seconds before the crash Appellant was traveling 58 miles per hour. 4 R.R. at 111. While she contends that she had "two Michelob Ultra beers," Appellant's Brief at 6, she testified that she might have had two or three beers. 5 R.R. at 63-64. While Appellant contends that Cepeda smelled alcohol "on the scene," Appellant's Brief at 8, Cepeda actually testified that she smelled alcohol on Appellant's breath. 5 R.R. at 11. And while Appellant testified that the broken beer bottles were "on the floorboard of the vehicle," Appellant's Brief at 32, Cepeda testified that Appellant "ran around the back of the vehicle" to get the beer bottles. 5 R.R. at 10. According to Officer Ramirez, she then went around to the back of the bulldozer to dispose of the beer in an elevated container attached to the bulldozer. 3 R.R. at 48-50.

Viewed in the light most favorable to the verdict, the record shows the following:

● On the night of the collision, Appellant and Manka had recently reunited after taking a six-month break from each other. 4 R.R. at 43. The breakup had hurt Appellant. 4 R.R. at 60. Appellant and Manka had argued about the people they were dating during the breakup. 4 R.R. at 61.

● While at the bar, Appellant had three beers and a shot in 45 minutes or one hour. 3 R.R. at 54-55; 4 R.R. at 19; 5 R.R. at 49.

● Appellant was intoxicated. 3 R.R. at 26-27; 4 R.R. at 47.

● Appellant rarely drinks. Naïve drinkers are more susceptible to the effects of alcohol. 4 R.R. at 164-165 & 183; 5 R.R. at 50.

● Alcohol can change the mood of a person and intensify angry feelings. 4 R.R. at 179 & 181.

● A couple of seconds before the collision, Appellant was arguing with Manka and striking him on the shoulder three times to make him shut up. 4 R.R. at 27, 33 & 96-97.

● Just before the collision, Appellant's vehicle was observed swerving and fishtailing. 5 R.R. at 7.

● Rather than following the slight bend in the road, Appellant drove straight off the roadway and never veered. 3 R.R. at 24.

● Appellant was traveling at "highway speed" when she left the roadway. And she never applied her brakes. 3 R.R. at 71; 4 R.R. at 114; 5 R.R. at 13.

● After the collision, Appellant disposed of the beer bottles in a location where they were not likely to be found. 3 R.R. at 48-49 & 51.

The jury was instructed that they could convict Appellant if they found beyond a reasonable doubt that she recklessly, to wit: (1) by failing to control the vehicle she operated, or (2) by failing to keep a proper lookout for another vehicle, or (3) by failing the keep the motor vehicle she operated on the roadway, or (4) by operating a motor vehicle while impaired, cause serious bodily injury to the victims by driving a motor vehicle into and against a bulldozer. C.R. at 1250-1251. There is evidence in the record that supports each and all of these theories.

In *Elliott*, the appellant admitted that she was distracted and intoxicated when she struck a pedestrian. This Court held that this "demonstrated to a rational jury that she consciously created a substantial and unjustifiable risk of danger to others." 2015 WL 1869472, at *3. While Appellant made no such concession in this case, there is sufficient evidence in the record from which the jury could have reasonably concluded that Appellant created a substantial and unjustifiable risk of danger to others. *See Trepanier*, 940 SW2d 827, 830 (Tex. App.-Austin 1997, pet. ref'd) (despite lack of concession by appellant,

23

evidence was sufficient to show that appellant created a substantial and unjustifiable risk).

Also in *Elliott*, this Court held that "the jury could have inferred Appellant's recklessness from her furtive conduct after the accident that demonstrated her consciousness of guilt." 2015 WL 1869472, at *4.

Appellant contends that since the jury acquitted her of the intoxication assault charges, those verdicts preclude a finding that she was impaired. Appellant's Brief at 14. However, the Court of Criminal Appeals rejected a similar argument in *Zuniga v. State*, 144 SW3d 477 (Tex. Crim. App. 2004), *overruled on other grounds by Watson v. State*, 204 SW3d 404, 415-417 (Tex. Crim. App. 2006) In *Zuniga*, the appellant was acquitted of intoxication manslaughter and convicted of manslaughter. *Id.* at 478. The Court of Criminal Appeals rejected the argument that the acquittal for intoxication manslaughter prevented a jury from considering alcohol use along with other conduct in concluding that the appellant's conduct was reckless. *Id.* at 487.

And to convict Appellant of the two aggravated assault counts, the jury did not have to find that she was intoxicated. They just had to find that she was operating a motor vehicle while impaired. C.R. at 1250-1251. *See Rubio v. State*, 203 SW3d 448, 452 (Tex. App.-El Paso 2006, pet. ref'd) ("The fact that one may legally drive after consuming alcohol does not prevent the State from

alleging the driver was reckless in doing so."); *Ventura-Salmeron v. State*, No. 03-98-00470-CR, 2000 WL 140906, at *4 n.1 (Tex. App.-Austin Feb. 3, 2000, pet. ref'd) (not designated for publication) ("We assume the State chose its language carefully, and by impairment due to alcohol consumption meant a condition short of intoxication.").

While Appellant also contends that there is no evidence to indicate that she actually did foresee the risk involved and then consciously decided to ignore it, Appellant's Brief at 33, in a case of this nature, the defendant need not be aware of the specific risk posed to another. *Trepanier v. State*, 940 SW2d at 829; *Elliott*, 2015 WL 1869472, at *3. "[W]hat matters is that she consciously created an unjustified risk of danger to others." *Elliott*, 2015 WL 1869472, at *3.

Considering all of the evidence in the record, the jury would have been acting irrationally if it had acquitted Appellant of the aggravated assault charges.

Accordingly, Appellant's issues should be overruled.

2. Reply to Appellant's Issues Nos. 3 & 4:

In her third and fourth issues, Appellant contends that because the State "failed to produce any evidence" that Appellant drove her vehicle "into and against a bulldozer," a fatal variance exists. Appellant's Brief at 33.

Appellant's contention is without merit.

*Standard of Review and Applicable Law*

In *Gollihar v. State*, 46 SW3d 243 (Tex. Crim. App. 2001), the appellant was convicted of stealing a go-cart. On appeal, he claimed that the evidence was insufficient because the model number of the stolen cart alleged in the indictment and the jury charge did not correspond with the evidence at trial which showed a different model number. *Id.* at 244.

The Court of Criminal Appeals initially noted that "[a] variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Id.* at 246. It then noted that it has "routinely treated variance claims as insufficiency of the evidence problems." *Id.* at 247.

After discussing their opinion in *Malik*, the Court held "that a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances." *Id.* at 256. In order to determine if a variance is material or immaterial, two questions must be asked: (1) whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and (2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id.* at 257.

"[W]hen faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient." *Id.* "Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included." *Id.*

The Court ultimately held that model number variance was not material. *Id.* at 258.

In *Johnson v. State*, 364 SW3d 292 (Tex. Crim. App. 2012), the appellant was charged with aggravated assault. The indictment alleged that he intentionally and knowingly caused serious bodily injury to the victim "by hitting her with his hand or twisting her arm with his hand." However, the victim testified that "appellant threw her against the wall and that hitting the wall caused her to fall to the floor and break her arm." On appeal, the appellant claimed that the variance between pleading and proof rendered the evidence legally insufficient. *Id.* at 293.

After discussing its prior opinion in *Gollihar*, the Court summarized the different types of variances as follows:

> [V]ariances can be classified into three categories, depending upon the type of allegation that the State has pled in its charging instrument but failed to prove at trial. First, a variance involving statutory language that defines the offense always renders the evidence legally insufficient to support the

conviction (i.e. such variances are always are always material). Second, a variance involving a non-statutory allegation that describes an "allowable unit of prosecution" element of the offense may or may not render the evidence legally insufficient, depending upon whether the variance is material (i.e. such variances are sometimes material). Finally, other types of variances involving immaterial non-statutory allegations do not render the evidence legally insufficient. The variance in the present case falls within the third category.

*Id.* at 298-299; *see also Fritzching v. State*, No. 02-10-00431-CR, 2012 WL 1222033, at *4 (Tex. App.-Fort Worth Apr. 12, 2012, pet. ref'd) (mem. op., not designated for publication) ("Several courts have held that the manner and means of an offense - particularly assault – is not an essential element of the offense and therefore need not be included in the hypothetically correct jury charge.").[5]

The Court then affirmed the judgment of the court of appeals affirming the trial court's judgment. 364 SW3d at 299.

## *Discussion*

Though Appellant contends that the State "failed to produce any evidence" that Appellant collided with a bulldozer, Appellant's Brief at 33 & 35, she also notes that Officer Ramirez testified that Appellant crashed into a

---

[5] "The phrase 'manner and means' describes *how* the defendant committed the specific statutory criminal act." *Ngo v. State*, 175 SW3d 738, 745 (Tex. Crim. App. 2005).

bulldozer. Appellant's Brief at 35-36. Even Appellant's husband testified that Appellant collided with a bulldozer. 4 R.R. at 57.

Additionally, Appellant's argument ignores *Johnson*.[6] "An immaterial variance is disregarded in a sufficiency of the evidence review. Appellant's claim has no merit." *Ngo*, 46 SW3d at 258.

Accordingly, Appellant's issues should be overruled.

3. Reply to Appellant's Issue No. 5:

In his final issue, Appellant contends that "[t]he disjunctive submission of the jury charge as well as arguments made by the State resulted in a non-unanimous verdict, which harmed [Appellant]." Appellant's Brief at 37.

Appellant's contention is without merit.

---

[6] While Appellant contends that the variance impaired her ability to prepare her defense, Appellant's Brief at 36, her defense was not based upon the type of machinery that she struck. Instead, Appellant claimed that, rather than being caused by her recklessness, the collision was caused by an oncoming vehicle that crossed into her lane. 4 R.R. at 51. Appellant even acknowledged that she struck some type of construction equipment. 4 R.R. at 51. *See Gollihar*, 46 SW3d at 258 (discussing whether the indictment gave the appellant sufficient notice to prepare a defense). And the record reflects that she was provided with a "discovery package" pursuant to the State's open file policy. 4 R.R. at 30. Additionally, since the unit of prosecution for assaultive offenses is each victim, *Ex parte Castillo*, No. PD-0545-14, 2015 WL 3486960, at *5 (Tex. Crim. App. June 3, 2015), Appellant may not be prosecuted again for the same crimes. *See Henry v. State*, No. 10-11-00443-CR, 2012 WL 2445048, at *1 (Tex. App.-Waco June 27, 2012, no pet.) (mem. op., not designated for publication) (two aggravated assault counts that alleged the same offense and differed only in the manner and means violated the Double Jeopardy Clause).

*Standard of Review and Applicable Law*

Alleged charge error is reviewed by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo*, 175 SW3d at 744. Preservation of charge error does not become an issue until it is necessary to assess harm. *Id.* at 743.

> Under the Texas Constitution and Code of Criminal Procedure, a Texas jury must reach a unanimous verdict. The jury must agree that the defendant committed one specific crime. That does not mean, however, that the jury must unanimously find that the defendant committed the crime in one specific way or even with one specific act.

*Landrian v. State*, 268 SW3d 532, 535 (Tex. Crim. App. 2008) (footnotes omitted); *see also Marinos v. State*, 186 SW3d 167, 175 (Tex. App.-Austin 2006, pet. ref'd) ("An indictment may allege different manner or means of committing a single offense, and jurors are not required to agree upon a single manner or means.").

The Court of Criminal Appeals has held that alternate pleading of the differing methods of committing one offense may be charged in one indictment. *Kitchens v. State*, 823 SW2d 256, 258 (Tex. Crim. App. 1991). "And although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the

disjunctive." *Id.* When the differing methods are submitted to the jury in the disjunctive, the jury may return a general verdict if the evidence supports a conviction under any one of them. *Id.*; *see also Marinos*, 186 SW3d at 175. The unanimity requirement is not violated by instructing the jury on alternate theories of committing the same offense. *Saenz v. State*, 451 SW3d 388, 390 (Tex. Crim. App. 2014); *Jourdan v. State*, 428 SW3d 86, 94 (Tex. Crim. App. 2014) ("Therefore, different modes of commission may be presented in a jury instruction in the disjunctive when the charging instrument, in a single count, alleged the different means in the conjunctive.").

*Discussion*

Though Appellant now complains about the State's argument, Appellant's Brief at 37, she did not object to the argument. 6 R.R. at 9-10 & 34-35. Consequently, nothing is presented for review. Tex. R. App. P. 33.1(a); *Estrada v. State*, 313 SW3d 274, 303 (Tex. Crim. App. 2010).

While the indictment in this case alleged differing methods of committing the aggravated assault offenses in the conjunctive, C.R. at 4, the jury was charged in the disjunctive. C.R. at 1250-1251.

Citing *Ngo*, Appellant's Brief at 38 & 40, Appellant contends that the charge deprived her of a unanimous verdict. However, Appellant's reliance on *Ngo* is misplaced because that case dealt with an indictment that contained

three paragraphs within a single count that alleged three distinct offenses. The three application paragraphs of the jury charge permitted the jury to convict the defendant without unanimously agreeing upon the commission of any one the three alleged offenses. 175 SW3d at 744.

In the instant case, Appellant acknowledges that she was charged by indictment with two counts of the same offense. Appellant's Brief at 38. The trial judge properly instructed the jury in the disjunctive because the jury did not have to agree on the different manner and means alleged in the indictment. *Id.* at 745-746. "Put simply, the jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 SW3d 417, 422 (Tex. Crim. App. 2011).

As in this case, the appellant in *Marinos*, an aggravated assault case, contended that jury unanimity was required with respect to the specific manner or means by which the aggravated bodily injury assault was committed. 186 SW3d at 175. The Austin Court of Appeals disagreed. *Id. Marinos* was subsequently cited with approval by the Court of Criminal Appeals in *Landrian*. 268 SW3d at 539 n.31.

The trial court did not err in charging the jury in the disjunctive, Accordingly, Appellant's issue should be overruled.

## Prayer

For the foregoing reasons, the State respectfully requests that the judgment of the trial court be affirmed.

Respectfully submitted,

/s/ Adolfo Aguilo, Jr.
Adolfo Aguilo, Jr.
State Bar No. 00936750
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
adolfo.aguilo@co.nueces.tx.us

## Rule 9.4 Certificate of Compliance

In compliance with Texas Rule of Appellate Procedure 9.4(i), I certify that the number of words in this brief, including those matters listed in Rule 9.4(i)(1), is 8,314.

/s/ Adolfo Aguilo, Jr.
Adolfo Aguilo, Jr.

## Certificate of Service

This is to certify that this brief was emailed this 8th day of September, 2015, to Appellant's counsel, Dante Eli Dominguez (ddominguez.law@gmail.com).

/s/ Adolfo Aguilo, Jr.
Adolfo Aguilo, Jr.