Leo Thomas DESORMEAUX
IV, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 09–10–00097–CR, 09–10–00098–CR.

Court of Appeals of Texas,
Beaumont.

Submitted Dec. 7, 2011.

Decided March 7, 2012.

Sue Korioth, Special Prosecutor, Jasper County, Dallas, Steven Hollis, Crim. Dist. Atty., Jasper, for Appellant.

Bruce N. Smith, Jack Lawrence, Beaumont, for state.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

A jury convicted Leo Desormeaux IV of capital murder and injury to a child. Because the State did not seek the death penalty, the capital murder conviction carried an automatic life sentence. *See* Tex. Penal Code Ann. § 12.31(a)(2) (West 2011); Tex.Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp.2011). The jury assessed punishment for the injury-to-a-child offense at twenty years in prison and assessed a $10,000 fine. The sentences for the two offenses run concurrently. Desormeaux presents eleven issues for review in this appeal.

### TRISTON DOBBINS

Triston Dobbins, a twenty-one-month-old child, died from "[b]lunt force trauma of head with closed head injury." The autopsy report determined the manner of death to be homicide and stated that a "shaken baby with head impact may be of strong consideration." The pathology findings included lacerations of the frontal lobes of the brain and the tonsils, multiple contusions over the entire body, and hemorrhaging of the brain.

On the day of his death, Triston had been in the care of his father, Leo Desormeaux IV, and for some of that time in the care of Crystal Desormeaux, his stepmother. Leo initially told investigating officers that he had put Triston in the bathtub and briefly left the room. Leo then heard a "loud thump," went back in the bathroom, and found the child "reared back and real tense and biting his tongue" and unable to breathe. Leo later told the officers that the injuries occurred when Triston was in Crystal's care. Leo testified he heard loud banging from the bathroom where Crystal was giving Triston a bath. He found the child alive but lethargic, whimpering, and "passing out." He repeatedly shook Tri-

ston in an effort to revive him. Triston died. The police were not notified of Triston's death until the next day.

## DOUBLE JEOPARDY

In issue one, Desormeaux argues that the conviction for injury to a child violates the Double Jeopardy Clause. The Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V; *see North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 801, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The injury-to-a-child indictment charges Desormeaux with failing to promptly seek medical treatment for his son. *See* Tex. Penal Code Ann. § 22.04(a) (West Supp.2011). Desormeaux contends that because injury to a child by an act and injury to a child by omission are different means of committing the same offense under section 22.04 of the Texas Penal Code, the injury-to-a-child offense is a lesser-included offense of capital murder. He argues he is being punished twice for the same offense.

■ The United States Supreme Court has explained that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *See Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). "[T]he Double Jeopardy Clause does not impose a limitation on the legislative prerogative to prescribe the scope of punishment." *Jimenez v. State*, 240 S.W.3d 384, 417 (Tex.App.-Austin 2007, pet. ref'd) (citing *Hunter*, 459 U.S. at 368, 103 S.Ct. 673); *see also Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex.Crim.App.1999). When a court deter-

mines that the legislature specifically authorized multiple punishments under two statutes, even if those two statutes proscribe the "same conduct," the court's task of statutory construction ends. Cumulative punishment may be imposed under the statutes in a single trial. *Hunter*, 459 U.S. at 368–69, 103 S.Ct. 673; *Jimenez*, 240 S.W.3d at 417–18.

■ The Texas Legislature has specifically authorized multiple punishments under section 22.04 and other sections of the Texas Penal Code. Section 22.04(h) provides as follows:

A person who is subject to prosecution under both this section and another section of this code may be prosecuted under either or both sections. Section 3.04 [severance] does not apply to criminal episodes prosecuted under both this section and another section of this code. If a criminal episode is prosecuted under both this section and another section of this code and sentences are assessed for convictions under both sections, the sentences shall run concurrently.

Tex. Penal Code Ann. § 22.04(h) (West Supp.2011). In *Littrell v. State*, 271 S.W.3d 273, 278 (Tex.Crim.App.2008), the Court of Criminal Appeals stated, "The Legislature knows well enough how to plainly express its intention that an accused should suffer multiple punishments for the same offense." The Court cited section 22.04(h) as one example "which makes it clear that an accused who is charged with injury to a child, elderly individual, or disabled individual may also be prosecuted (and presumably, punished) for any other penal-code violation to which his conduct may subject him." *Littrell*, 271 S.W.3d at 278 (citing *Gonzalez v. State*, 8 S.W.3d 640, 641 n. 4 (Tex.Crim.App.2000), and *Johnson v. State*, 208 S.W.3d 478, 511 (Tex.App.-Austin 2006, pet. ref'd)). Desormeaux's convictions and punishments for

both capital murder and injury to a child in the same trial do not violate the Double Jeopardy Clause. *See Hunter,* 459 U.S. at 368–69, 103 S.Ct. 673. We overrule issue one.

## PHOTOGRAPHS

In issue two, Desormeaux argues that the trial court abused its discretion in admitting photographs of the deceased child, because the photographs are "highly inflammatory," "[do] not satisfy Rule 403," and "were mostly unintelligible to the jury." Desormeaux asserts that the photographs which show removal of the organs are particularly prejudicial. He contends that the danger of unfair prejudice from admission of the photographs substantially outweighs their probative value.

■■■ The admissibility of photographs is within the trial court's discretion. *Davis v. State,* 313 S.W.3d 317, 331 (Tex. Crim.App.2010). When verbal testimony as to matters depicted in a photograph is relevant, then ordinarily the photograph is relevant evidence also. *Gallo v. State,* 239 S.W.3d 757, 762 (Tex.Crim.App.2007). Relevant evidence is presumed to be more probative than unfairly prejudicial. *Id.* (citing *Williams v. State,* 958 S.W.2d 186, 196 (Tex.Crim.App.1997)). Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403; *see Davis,* 313 S.W.3d at 331.

■■ Of the more than fifty photographs of Triston that were admitted into evidence, appellant objected to twenty-four on Rule 403 grounds. *See* Tex.R. Evid. 403. The twenty-four photographs were all taken during the medical examiner's investigation. The photographs illustrate the results of the external and internal examination of the body and the injuries the child suffered before his death. They show the child lying on the medical examiner's table. The photographs were taken from different angles and show various views of the contusions and lacerations on the child.

■■ Though gruesome, the photographs are probative of the full extent of the internal and external injuries inflicted. A photograph is not inadmissible merely because it reflects the reality of the brutal crime committed. *Williams v. State,* 301 S.W.3d 675, 692–93 (Tex.Crim.App.2009). The photographs show each individual injury and help explain the medical testimony describing the child's various injuries. *See id.; see also Salazar v. State,* 38 S.W.3d 141, 151–52 (Tex.Crim.App.2001) (Autopsy photos showing internal organs that had been removed during the autopsy, so as to portray extent of injury to organ, did not depict mutilation of victim, and there was no danger that jury would attribute removal of organs to defendant.).

Desormeaux relies on *Erazo v. State,* 144 S.W.3d 487 (Tex.Crim.App.2004). The Court concluded that the autopsy photographs of the victim's unborn child were not helpful to the jury in assessing punishment for the victim's death and were more unfairly prejudicial than probative. *Id.* at 494–95. The photographs here are of the victim named in the indictment and depict his injuries. Under the circumstances in this case, we cannot say that the trial court abused its discretion in admitting the photographs. We overrule issue two.

## EXTRANEOUS OFFENSES

Because the life sentence was automatic for the capital murder conviction, the jury assessed a sentence only on the injury-to-a-child offense. In issue three, Desor-

meaux argues the trial court abused its discretion by failing to instruct the jury on extraneous offenses during the punishment phase of the trial. At punishment, the State offered all the evidence from the guilt phase of trial. The record at trial included evidence of past injuries to the child, not just those that the child suffered on the day of his death.

■ When evidence of extraneous offenses and bad acts is before the jury, the trial court must include in the punishment charge an instruction that the jury may not consider that evidence unless the evidence meets the statutorily prescribed beyond-a-reasonable-doubt standard. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex.Crim. App.2000). The defendant is not required to request the instruction or object to its omission to preserve error under article 37.07, section 3(a)(1) of the Code of Criminal Procedure. The error may be raised for the first time on appeal. *Huizar*, 12 S.W.3d at 484.

■ The State asserts that the evidence at the guilt and punishment phases of the trial was all "same transaction contextual evidence," and no instruction on extraneous offenses was necessary. "Same transaction contextual evidence" is evidence that "imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim.App. 1993); *see Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App.1993).

■ The medical examiner who performed the autopsy testified Triston had a large number of injuries that went along with "long-term physical abuse." The older injuries were not acts that were alleged in the indictment. The evidence of older injuries did not provide information essential for the trier of fact to understand the context of events. The circumstances of the failure to seek medical treatment for the child were understandable without the evidence of the older injuries.

■ Because appellant did not object to the failure to include the instruction, we consider whether the "error is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim.App.2011) (quoting *Almanza v. State*, 686 S.W.2d 157, 171–74 (Tex.Crim.App. 1985) (op. on reh'g)). Errors that result in egregious harm affect the basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make the State's case clearly and significantly more persuasive. *Id.* 490.

■ Desormeaux admitted he did not call 9–1–1 or seek any kind of medical help for the child. Desormeaux's defensive theory appeared to be that he did not seek help for the child, because he panicked and was in a daze, and seeking help would have been useless. The inclusion of the extraneous offense evidence did not vitally affect this defensive theory.

During arguments to the jury at punishment, the prosecutor did not mention prior injuries. He made a veiled reference to prior injuries during the argument in the guilt-innocence phase. The evidence at trial regarding prior injuries seemed to implicate someone other than appellant. Considering the state of the evidence, the arguments of counsel, as well as the record as a whole, we cannot say that appellant was egregiously harmed by the trial court's omission in the punishment charge of a beyond-a-reasonable-doubt instruction on extraneous offenses. We overrule issue three.

## CAUSE OF DEATH

In issues four, five, and six, appellant challenges the evidence on the cause of the child's death. Appellant contends that because the examiner did not testify in terms of "medical certainty" concerning the cause of death, his testimony was insufficient to prove cause of death beyond a reasonable doubt. Desormeaux also argues that "shaken baby syndrome" is not generally accepted as a reliable diagnosis within the scientific community. He further contends that because the State did not prove "shaken baby syndrome" as the cause of death, neither capital murder nor injury to a child by omission was proven beyond a reasonable doubt.

Appellant cites no criminal case requiring that the testimony regarding cause of death include the phrase "reasonable medical certainty," and he did not object to the testimony on this basis at trial. *See* Tex. R.App. 33.1. Appellant did not raise any objection concerning the reliability of evidence of "shaken baby syndrome" at trial. *See id.; see also Resendiz v. State,* 112 S.W.3d 541, 546 (Tex.Crim.App.2003). Issues four and five are overruled.

In the capital murder offense, the indictment and the jury charge allege that Desormeaux intentionally or knowingly caused the death of Triston by "choking him, shaking him and striking his head with or against an object, the exact nature of which is unknown to the Grand Jury...." The autopsy report states that the cause of death was "[b]lunt force trauma of head with closed head injury[,]" and that a "shaken baby with head impact may be of strong consideration." In explaining the child's injuries, the examiner indicated that "shaking the baby" and "simultaneously striking the baby's head up against something" could cause the kind of hemorrhages seen in the autopsy photos, and that the child's injuries were indicative of Triston's being shaken. When questioned by defense counsel about cause of death, the doctor further testified as follows:

> One of three things: It could be the shaken baby, it could be the head impact, or it could be a combination of the two. I can't separate those three different things out. I can say that the findings are all there for those three things."

 Anticipating variances in the proof, the State may plead alternative "manner and means" in the conjunctive when proof of any one theory of the offense will support a guilty verdict. *See Hammock v. State,* 211 S.W.3d 874, 879 (Tex.App.-Texarkana 2006, no pet.). Even though the State pleads alternate theories of the same offense, it is not required to prove guilt under all the theories alleged. *Id.* Proof of guilt under one theory of the offense will suffice for conviction. *Id.; see Price v. State,* 59 S.W.3d 297, 301 (Tex. App.-Fort Worth 2001, pet. ref'd).

An appellate court measures the sufficiency of the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Byrd v. State,* 336 S.W.3d 242, 246 (Tex.Crim. App.2011) (quoting *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997)). "Such a charge is one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Byrd,* 336 S.W.3d at 246 (quoting *Malik,* 953 S.W.2d at 240).

 The choking, shaking, and striking of the head set out in the indictment and the jury charge are alternate means of committing one offense. The

indictment and the jury charge submitted the alternative manner and means of committing capital murder in the conjunctive. We review the sufficiency of the evidence under the hypothetically correct jury charge—which may include one manner and means for which there is sufficient evidence to support the guilty verdict. *See Byrd*, 336 S.W.3d at 246. The hypothetically correct jury charge would ask if the defendant intentionally or knowingly caused the child's death by blunt force trauma to the head. Measured against this hypothetically correct jury charge, the evidence is legally sufficient to support a conviction for capital murder.

As to the other offense for which Desormeaux was convicted, the jury's finding of injury to a child by omission does not depend upon a finding of shaken baby syndrome. The indictment and charge stated that Desormeaux caused "serious bodily injury to Triston . . . by failing to seek medical treatment for [him], and the Defendant had a statutory duty to act, namely the care and protection of Triston. . . ." We overrule issue six.

### AUTOMATIC LIFE SENTENCE

The Texas capital murder sentencing scheme provides that, upon conviction, an offender may receive either death or life imprisonment without parole. Tex. Penal Code Ann. § 12.31(a); Tex.Code Crim. Proc. Ann. art. 37.071, § 1. In issues seven and eight, Desormeaux argues that the automatic life sentence without parole violates the Eighth Amendment and the Fourteenth Amendment's Due Process Clause. Appellant concedes he did not object on these grounds below. The State argues he waived the complaints. The Texas Court of Criminal Appeals has held that to preserve error for appeal a challenge to the constitutionality of a statute must first be presented in the trial court.

*See Freeman v. State*, 340 S.W.3d 717, 730 (Tex.Crim.App.2011); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex.Crim.App.2009).

■ Even if we could reach the merits of appellant's constitutional challenges, courts have held the statute constitutional and not violative of the right to an individualized sentence. *See Sierra v. State*, 157 S.W.3d 52, 64–65 (Tex.App.-Fort Worth 2004), *aff'd on other grounds*, 218 S.W.3d 85 (Tex.Crim.App.2007); *Cienfuegos v. State*, 113 S.W.3d 481, 494–96 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd); *see also Moore v. State*, 54 S.W.3d 529, 544 (Tex.App.-Fort Worth 2001, pet. ref'd). Furthermore, the United States Supreme Court has held that a sentencing scheme that calls for an automatic sentence of life imprisonment rather than an individualized punishment determination does not violate the Constitution. *See Harmelin v. Michigan*, 501 U.S. 957, 961–62, 994–95, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). We overrule issues seven and eight.

### SEPARATION OF POWERS DOCTRINE

■ In issue nine, appellant argues article 37.071 violates article II, section 1, of the Texas Constitution. *See* Tex. Const. art. II, § 1. Specifically, appellant contends that the "requirement of the [p]rosecutor's concurrence before [a]ppellant may receive a life sentence" is a violation of the separation of powers doctrine. Neither section 12.31(a) of the Texas Penal Code nor article 37.071, section 1, gives the prosecutor a "veto" power on the trial court's sentencing discretion. Tex. Penal Code Ann. § 12.31(a) (capital felony punishment); Tex.Code Crim. Proc. Ann. art. 37.071, § 1 ("procedure in capital case"). Regardless, appellant did not preserve this issue for appellate review, because it was not raised in the trial court. *Karenev*, 281 S.W.3d at 434. Issue nine is overruled.

### SUFFICIENCY OF EVIDENCE

In issues ten and eleven, Desormeaux argues the evidence is insufficient to prove he was guilty of the offense of injury to a child by omission. To the extent Desormeaux's failure to seek medical treatment created a substantial risk of death above and beyond that resulting from the initial injuries, Desormeaux was subject to criminal liability for the omission. *See Johnston v. State,* 150 S.W.3d 630, 637 (Tex.App.-Austin 2004, no pet.). Appellant relies on the testimony of the examiner, who stated he doubted whether Triston would have survived even if medical help had been provided. The examiner qualified his remarks by stating that he is not a "clinical person" and does not treat people. He is not an expert in that context.

Leo Desormeaux admitted that he did not seek medical treatment for the child and the child was having difficulty breathing. Desormeaux testified Crystal told him to call, but he never sought medical help for Triston. Rather than seek medical treatment, Desormeaux says he shook him repeatedly to "wake him up."

In reviewing the legal sufficiency of the evidence under *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we are to consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. The jury heard appellant's testimony about his failure to seek medical care and his resulting attempts to shake the child awake. The jury was responsible for evaluating the evidence and making the determination as to whether appellant's failure to seek medical treatment caused serious bodily injury to Triston. *See Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007) (responsibility of trier of fact to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts). Given the testimony regarding the obvious physical distress the child was in, and Crystal's assessment that immediate emergency medical attention should be sought, the jury could reasonably conclude that the failure to seek medical treatment caused incrementally greater injury increasing substantially the risk of death. We overrule issues ten and eleven.

The judgments are affirmed.

AFFIRMED.