# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00070-CR

---

**Regina Long, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
### NO. 2C1606985, THE HONORABLE JOHN MICHAEL MISCHTIAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Regina Long appeals a judgment of conviction for misdemeanor cruelty to non-livestock animals. *See* Tex. Penal Code § 42.092(b)(3), (5). Appellant argues that (1) the trial court abused its discretion by admitting photographs of animal remains found on her property as well as several of the bones, and (2) error in the jury charge caused her egregious harm. We affirm the trial court's judgment.

## BACKGROUND

The State alleged that appellant failed "unreasonably to provide necessary food, water, care, or shelter" for dogs on her property in Killeen or confined the dogs "in a cruel manner." *See id.*; *see also id.* § 42.092(a)(3) ("'Cruel manner' includes a manner that causes or permits unjustified or unwarranted pain or suffering."). The case was tried to a jury over two days in December of 2019. The jury heard testimony from Bell County sheriff's deputy

Joe Ramos; crime scene technician Frankie Martinez; animal control officers Timothy Cook, Dustin David Connell, and Brittany Renner; and Dr. Gina Jensen, a veterinarian who consulted on the case.

In July of 2016, Cook and Connell investigated a report of loose dogs in the vicinity of appellant's property at 995 Riverside Drive. They found two dogs lying in the street near her property and tried to apprehend them. Cook and Connell chased the animals through an open gate and onto appellant's property, where they found "two or three" dogs on chains and several more running lose. Several "containment systems"—essentially outdoor kennels—had been combined to allow the dogs to run from one enclosure to the other. There was a large hole in the kennels' exterior fence. The dogs ate from a pile of dog food mixed with dirt and feces and drank algae-covered water from buckets. The property, including the kennels, was covered in piles of trash, including old dog food bags and rusted cans. Several of the dogs could not reach the food pile or the water buckets because their chains had become entangled with debris or tree branches. Cook took several photos, which were admitted as State's Exhibit 4, and published to the jury. Connell echoed Cook's testimony.

Cook and Connell reported the discovery, and Deputy Ramos began investigating. Ramos testified that appellant is listed as the registered owner of the property and that she had kept the property taxes current. In August of 2016, Ramos and a group of deputies, accompanied by Cook and Connell, executed a search warrant on the property. The conditions were essentially unchanged. Cook found a half-eaten puppy in one of the cages, and Ramos testified that they found body parts that indicated the dogs had been eating rats for food. Ramos testified that the water in some of the buckets was so old that it had turned brown from dissolved leaves. The officers also discovered a significant number of animal skeletons in a wooded area at the

2

edge of the property. Ramos testified that the bones were from dogs and that someone must have intentionally moved their bodies to that location from other parts of the property because it was not accessible to dogs. Cook agreed, testifying that someone piled the bodies at the edge of the property. At Ramos' direction, Martinez took two hundred and thirty-two pictures of the property, the living dogs, and the skeletons. The animal control officers seized fourteen skulls and, after obtaining another court order, seized all the living animals.

At the beginning of Ramos' testimony, the State moved to admit Martinez's photographs, and appellant objected that the photographs depicting animal remains (approximately half of the total) were more prejudicial than probative. *See* Tex. R. Evid. 403. The trial court overruled the objection and admitted the images as State's Exhibit 2. The prosecutor then questioned Ramos about the photographs.

The State called Dr. Jensen, a veterinarian, to testify regarding her examination of the living dogs and the remains. During her testimony, the State moved to admit the skulls, and appellant objected that they were more prejudicial than probative. *See id.* The district court overruled the objection and admitted the bones as State's Exhibit 9. Dr. Jensen testified that she identified eleven of the skulls as dogs and three as goats. She opined that one of the skulls had been on the ground for a long period of time based on its condition.

Dr. Jensen also examined the dogs that were seized from appellant's property. Echoing statements from Ramos and the other animal control officers, she described the dogs as feral—meaning they were completely unaccustomed to human contact—and suffering from significant health problems: all were covered in fleas and other insects, and all but one tested positive for intestinal parasites. The dogs' living conditions would have made it difficult for them to recover from the parasites because they would have been reinfected with the parasites

3

from their feces. More seriously, eight dogs tested "high positive" for heartworms, meaning the infections were advanced and could start interfering with the animals' breathing.

Connell and Renner also testified regarding the condition of the dogs. During Connell's testimony, the district court admitted nineteen photographs of the dogs taken during the examination. The photographs were published to the jury, and Connell described the health conditions depicted there: several animals had "fly strikes," which is where flies "attack the tips of the ears" and "eat away at it and lay eggs." Other images showed an open wound on a dog and another with a skin infection resulting from neglect. Connell testified that these conditions developed "over a long period of time." Renner, who worked with the dogs at the animal shelter after the seizure, testified that the animals' behavior problems were so significant that eventually all but one were euthanized.

The jury returned a verdict of guilty, and the trial court assessed her punishment at imprisonment for one year, suspended the sentence, and placed her on community supervision for two years. This appeal followed.

## PHOTOGRAPHS AND ANIMAL SKULLS

Appellant argues that the trial court erred by overruling her objection that the photographs depicting the animal bones and the animal skulls themselves were more prejudicial than probative. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Colone v. State*, 573 S.W.3d 249, 263–64 (Tex. Crim. App. 2019). A "trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019);

4

*see also Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) ("A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement.").

Rule 403 allows for the exclusion of relevant evidence when its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Tex. R. Evid. 403. Evidence is unfairly prejudicial when it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Foyt v. State*, 602 S.W.3d 23, 48 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990)). Rule 403 favors admissibility, "and the presumption is that relevant evidence will be more probative than prejudicial." *Cox v. State*, 495 S.W.3d 898, 903 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Courts conducting a Rule 403 analysis must balance (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Jenkins v. State*, 493 S.W.3d 583, 608 (Tex. Crim. App. 2016).

We begin with the probative value of the items and the State's need for the evidence. "Probative value refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). The State had the burden to prove that appellant knowingly or recklessly committed the offense by either failing unreasonably to provide the dogs with necessary food, water, care, or shelter or by confining them in a cruel manner. *See* Tex. Penal Code § 42.092(b)(3), (5). The State argued that appellant was aware of the dogs' living conditions because she moved a large number of deceased dogs to the wooded

area where the skulls were found. The photographs and skulls have probative value because they, along with the testimony of Ramos and Dr. Jensen, help establish that many dogs died on the property over a long period of time and that someone moved the remains to that location. Appellant argues the photographs and skulls do not prove that she moved them. Even if the disputed items do not alone prove appellant's awareness, that does not deprive the photographs and skulls of probative force. *Cf. Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021) ("Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.").

Nevertheless, appellant contends that the State had little or no need for the disputed items. In evaluating this factor, we consider the availability of other evidence to establish the fact in question; the strength of that evidence, if any; and whether the fact in question is "related to an issue that is in dispute." *See Erazo v. State*, 144 S.W.3d 487, 495–96 (Tex. Crim. App. 2004). Appellant argues the State had ample other evidence to show that she should have known of the poor conditions on her property: Cook's photographs from the initial visit, Ramos' testimony that appellant is the registered owner and kept the taxes current, Cook's testimony that the conditions on the property were essentially unchanged from 2012, Connell's testimony that the dogs' various health conditions would have taken months to develop, and the photographs of the dogs from Dr. Jensen's examination. But the State's witnesses used the disputed items to illustrate their testimony—Ramos used these photographs to explain his theory that the bodies were intentionally moved to that location, and Dr. Jensen identified specific features of one of the skulls that indicated it had been exposed to the elements for a long time, while other skulls were newer. Thus, the disputed evidence corroborates the State's witnesses on

6

an essential element of the charged offense—appellant's mental state—and was therefore necessary to the State's case. *See Gallo v. State*, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007) (holding no abuse of discretion in admission of autopsy photographs where photographs demonstrated extent of victim's injuries and medical examiner used them to explain her testimony); *Desormeaux v. State*, 362 S.W.3d 233, 237 (Tex. App.—Beaumont 2012, no pet.) (holding no abuse of discretion in admitting autopsy photographs because "[t]hough gruesome," the photographs "show each individual injury and help explain the medical testimony describing the child's various injuries").

Appellant argues that the potential to impress the jury in some irrational way is exceedingly high because evidence of dead animals is inherently inflammatory. She invites us to follow the lead of the supreme court in *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886, 890 (Tex. 1975). *Heddin* was an eminent domain dispute about the diminished value of land caused by laying a gas pipeline. *Id.* at 887. The landowners argued that public fear of a pipeline breach diminished the value of their land and, as an illustration, offered photographs of animals who died in the rupture of a different pipeline eight months after the taking. *Id.* The supreme court reversed the judgment in favor of the landowners because the photographs were "highly inflammatory" and irrelevant to the disputed issues. *See id.* at 890 (stating that photographs "were shown not for the purpose of establishing the dangerousness of the pipeline but rather for their shock value" and "must be construed as an attempt to appeal to the prejudice and passion of the jury"). We agree that images of dead dogs carry heightened emotional weight. *See Strickland v. Medlen*, 397 S.W.3d 184, 185 (Tex. 2013) ("Texans love their dogs."). Moreover, the photographs were in color and projected on a screen in front of a jury. *See Erazo*, 144 S.W.3d at 489 (explaining that in considering the admission of photographs, courts also

7

consider "the number of photographs, the size, [and] whether they are in color or are black and white"). However, unlike the photos in *Heddin*, the disputed evidence here is relevant to an essential element of the charged offense, and the size and color of the images helped the jury discern the animal bones among the debris. Although the evidence might be termed gruesome, it reflects the reality of the dogs' living conditions on appellant's property. *Cf. Paredes v. State*, 129 S.W.3d 530, 540 (Tex. Crim. App. 2004) (holding that "while the photos are indeed prejudicial, they depict the condition of the victims' bodies when recovered" and so were not more prejudicial than probative).

Finally, we consider the time needed to develop the evidence. Appellant estimates that the time devoted to the photographs and skulls comprises approximately twenty-three pages of the trial record, or about 13%, and concedes that this was not excessive. As appellant concedes, the time devoted to this evidence was not excessive. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (holding that evidence taking up less than 25% of State's case-in-chief was not excessive).

Balancing these factors, we conclude that the trial court did not abuse its discretion by concluding that the probative value of the evidence outweighed the potential of unfair prejudice. We overrule appellant's first issue.

## JURY CHARGE

Appellant argues in her second issue that the trial court erred by failing to properly tailor the definition of the culpable mental states in the jury charge to the applicable conduct elements of the offense. We review alleged jury-charge error through a two-step process, first determining whether the charge was erroneous and, if so, whether the error

8

caused sufficient harm to require reversal. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015).

A trial court is statutorily obligated to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). The Penal Code sets out three possible conduct elements that may be involved in the offense: (1) the nature of the conduct, (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). "In a jury charge, the language in regard to the culpable mental state must be tailored to the conduct elements of the offense." *Id.*; *see also* Tex. Penal Code § 6.03 (defining four culpable mental states).

The definition of "knowingly" in the abstract section of the charge includes language as to all three conduct elements, and the definition of "recklessly" omits the nature-of-the-conduct but includes the other elements. Appellant argues that this was error because cruelty to non-livestock animals is a nature-of-conduct offense. *See Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015) ("Nature-of-conduct offenses are defined by the act or conduct that is punished, regardless of any result that might occur."). Even if we assume that appellant is correct—and that the jury charge is erroneous—we nevertheless conclude that appellant did not suffer egregious harm from the error.

If a claim of jury charge error is not properly preserved in the trial court, as it was not here, reversal is required only upon a showing of "egregious harm," which occurs "when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). More specifically, charge error "is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable

9

right, or vitally affects a defensive theory." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). In examining the record for egregious harm, we consider: (1) the entirety of the jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). The analysis is "fact specific" and "done on a "case-by-case basis." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

**Entirety of the Jury Charge**

When the alleged error involves a misstatement of the required culpable mental states, we may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge. *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); *Dorsey v. State*, No. 03-19-00411-CR, 2021 WL 2460636, at *7 (Tex. App.—Austin June 17, 2021, pet. ref'd) (mem. op., not designated for publication). Here, the application paragraph instructed the jury:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 24th day of August, 2016, A.D., in Bell County, Texas, the defendant, Regina Arlene Long, did then and there knowingly or recklessly fail unreasonably to provide necessary food or water or care or shelter from an animal, namely dogs in the defendant's custody; or transport or confine an animal, to wit: dogs, in a cruel manner, then you will find the defendant guilty of the offense of cruelty to non[-]livestock animals as charged in the information. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

Thus, the application paragraph appropriately instructed the jury that it could only convict appellant if it found that she knowingly or recklessly engaged in certain conduct, regardless of the result of her conduct or the circumstances surrounding it.  This is consistent with the essential elements of the offense as charged in this case.  *See* Tex. Penal Code § 42.092(b)(3) & (5).

We generally presume the jury followed the trial court's instructions.  *Beltran De La Torre v. State*, 583 S.W.3d 613, 620 (Tex. Crim. App. 2019).  For that reason, when the application paragraph of the jury charge correctly instructs the jury on the law applicable to the case, error in the abstract instruction is generally not egregious.  *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Gilbert v. State*, 494 S.W.3d 758, 768 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).[1]  We conclude that consideration of the entirety of the jury charge weighs against a finding of egregious harm because the application paragraph correctly applied the culpable mental states to the nature of the conduct of the alleged offense.  *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental

---

[1] Relying on *Hollander v. State*, 414 S.W.3d 746, 750 (Tex. Crim. App. 2013), appellant argues that a "proper application paragraph is not necessarily a cure-all."  We agree that an egregious-harm analysis is "a fact specific one which should be done on a case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).  However, *Hollander* does not change our analysis.  A jury convicted Hollander of the offense of criminal mischief by diverting a public service for tampering with an electrical meter to divert electricity to his house. 414 S.W.3d at 747–48.  The statute defining the offense creates a presumption the person who received the "economic benefit" of the service engaged in the prohibited conduct.  *Id.* at 748. The trial court failed to instruct the jury that it must find the predicate facts—that the defendant received the economic benefit—beyond a reasonable doubt.  *Id.*  The application paragraph, however, properly instructed the jury that it could convict Hollander only if it found that the State proved each essential element of the offense beyond a reasonable doubt.  *Id.* at 750.  The court of criminal appeals held that this general instruction did not cure the error.  *Id.*  Nothing in *Hollander* undermines our conclusion that consideration of the entire jury charge in this case weighs against egregious harm.

11

states to proving the conduct element of the underlying offense."); *Hughes*, 897 S.W.2d at 296 ("Although the definitions of 'intentionally' and 'knowingly' indiscriminately set forth the three alternative conduct elements, when those terms are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense."); *see also Isreal v. State*, No. 03-17-00296-CR, 2018 WL 5305502, at *7 (Tex. App.—Austin Oct. 26, 2018, pet. ref'd) (mem. op., not designated for publication) (reaching similar result).

**State of the Evidence**

Under this factor, we examine "the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington*, 451 S.W.3d at 841. Appellant argues that this factor weighs in favor of egregious harm because she "vigorously disputes the sufficiency of the evidence to prove she committed the offense," but she did not do so at trial. She did not challenge the State's witnesses beyond cross-examining them on defects in the warrant paperwork and their failure to act sooner, and she offered no evidence of her own concerning the animals' living conditions. She also asserts that the State relied on "inadmissible and prejudicial evidence" (i.e., the photographs and skulls) to secure the conviction, but we have concluded that this evidence was admissible. Moreover, the testimony of the animal control officers, Dr. Jensen, and Deputy Ramos, the unchallenged photographs of the conditions on the property, and the photographs of the dogs' condition at the animal shelter, all provide substantial evidence of guilt. *See Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) ("The presence of overwhelming evidence of guilt plays a determinative role in resolving the issue and may be considered when assessing jury-charge

error."). After reviewing the record, we conclude that the state of the evidence weighs against a finding of egregious harm.

**Arguments of Counsel**

Under this factor, we consider whether any statements made during the trial by the prosecutor, the defense counsel, or the trial court may have exacerbated or ameliorated the alleged error in the jury charge. *Arrington*, 451 S.W.3d at 844. Appellant argues that the prosecutor discussed whether appellant acted knowingly or recklessly in her closing argument and inaccurately characterized what constitutes recklessness. The record does not support this view of the closing argument. The prosecutor told the jury that they were not required to unanimously agree on whether appellant acted knowingly or recklessly. In doing so, she described the difference between the two culpable mental states as "whether [appellant] meant to do this, or whether it was just through pure negligence." Appellant's counsel objected to the prosecutor's statement that recklessness is equivalent to negligence, and the trial court agreed. The prosecutor corrected herself, explaining that a finding that appellant was reckless meant that "any reasonable person could see that by doing what she did, it could cause these dogs suffering." Appellant does not argue that this was an incorrect statement of the law. Taken in context, the prosecutor's closing argument did nothing to exacerbate the alleged error. We find nothing in the arguments of counsel to indicate that appellant was egregiously harmed.

**Other Relevant Information**

Regarding the fourth factor, our review of the record has disclosed no other information relevant to the egregious-harm analysis.

**Conclusion**

After considering the entire jury charge, the state of the evidence, and the arguments of counsel, we cannot conclude that the alleged error in the jury charge affected the very basis of the case, deprived appellant of a valuable right, or vitally affected the defensive theory. *See Villarreal*, 453 S.W.3d at 433. Accordingly, we hold that instructions defining the culpable mental states in the abstract portion of the jury charge, if erroneous, did not egregiously harm appellant.

## CONCLUSION

We affirm the trial court's judgment.

_____

Edward Smith, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   January 7, 2022

Do Not Publish

14