

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00035-CR

———————————————

SABRINA HO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. F23-1412-462

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Sabrina Ho's boyfriend (Boyfriend) physically abused and ultimately murdered her seven-year-old son (Son).[1]  A jury found not only that Ho was a party to Boyfriend's actions but also that she failed to protect Son or seek medical attention for him.  It convicted her of capital murder, four counts of injury to a child by action, and two counts of injury to a child by omission.  *See* Tex. Penal Code Ann. §§ 19.03(a)(8), 22.04(a)(1), (a)(3).

Ho appeals, arguing that (1) the trial court abused its discretion by refusing to strike two veniremen for cause; (2) the jury charge erroneously included omission-based theories of criminal liability for her action-based offenses; and (3) the allegations underlying her capital murder conviction overlapped with those for two of her other convictions, thereby punishing her multiple times for the same offense in violation of her double jeopardy rights.  None of these challenges have merit; we will affirm.

## I.  Background

Boyfriend's abuse and murder of Son is undisputed, but Ho denied responsibility for Boyfriend's actions and for Son's injuries and death.  After she was indicted for seven offenses—one count of capital murder, four counts of injury to a

---

[1]Boyfriend pleaded guilty to capital murder and was sentenced to confinement for life without the possibility of parole.

child by action, and two counts of injury to a child by omission[2]—her case proceeded to a jury trial.

## A. Voir Dire

During voir dire, Ho raised concerns regarding several veniremen, including Jurors 2 and 52.

Ho's concern regarding Juror 2 stemmed from his conflicting answers to questions related to the punishment range for murder. When asked by the State if he could consider the full range for murder, Juror 2 stated that he could, but when Ho's counsel asked him a variation of the same question later, he stated that he could not consider assessing the minimum five-year sentence for the offense of murder. After the parties finished their voir dire presentations and the trial court began identifying veniremen it needed to individually question for clarification, Ho added Juror 2's name to the list based on his "vacillating."

During Juror 2's individual questioning, he acknowledged his contradictory answers but clarified that, "if it's what the law states," he could consider the full range

---

[2]For Ho's four counts of injury to a child by action, her indictment alleged three counts of intentionally or knowingly causing Son bodily injury and a fourth count of intentionally or knowingly causing Son serious bodily injury. *See* Tex. Penal Code Ann. § 22.04(a)(1), (a)(3), (e), (f). Similarly, for Ho's two counts of injury to a child by omission, her indictment alleged one count of intentionally or knowingly causing Son bodily injury and a second count of intentionally or knowingly causing Son serious bodily injury. *See id.* § 22.04(a)(1), (a)(3), (b), (e), (f).

3

of punishment for murder and "render an opinion accordingly." The trial court sua sponte ruled that "Number 2 is staying."

As for Juror 52, she answered "no" to a series of questions from Ho's counsel regarding the State's burden to prove an unknown object.[3] Specifically, Ho's counsel asked each venireman to confirm that "the [State] ha[s] to prove it's an unknown object" rather than an identifiable object and "[i]f they prove anything else, that it happened any other way, [the defendant]'s entitled to a verdict of not guilty." This question confused quite a few veniremen,[4] and it elicited multiple objections from the State, prompting the trial court to urge Ho's counsel to "just ask about the elements of the offense." But Ho's counsel pressed on, seeking a "yes" or "no" from each venireman, and he repeatedly rephrased the question as he went. By the time Ho's counsel came to Juror 52—who was near the end of the 60-member panel—neither the legal requirements nor the precise iteration of the question was clear. Nonetheless, Juror 52 responded "[n]o" to the general line of inquiry.

So, as with Juror 2, when the trial court began listing the veniremen it intended to individually question, Ho's counsel requested that Juror 52 be added to the list. Initially, Ho's counsel explained the need for such individual questioning without reference to the unknown-object issue, instead pointing to statements that Juror 52

---

[3]Some of the counts in Ho's indictment alternatively alleged that Boyfriend struck Son with his hand or caused Son's face or body to strike an unknown object.

[4]Multiple jurors asked, "How do you prove an unknown?"

4

had made regarding her father's law practice and experience with the police.[5] But just before Juror 52 was brought in for individual questioning, Ho's counsel described his concern as relating to "punishment and elements." Counsel did not explain these shorthand phrases, but from what followed, the trial court appears to have understood "elements" as a reference to the court's individual questioning of a previous venireman regarding "the element answer where the unknown object was involved."

Thus, the trial court raised Ho's three referenced topics with Juror 52: her father's law practice, punishment, and the unknown-object issue. When the court turned to the last of these topics, it noted that its question "was on elements," it commented that "everybody kind of got off on the unknown object," and it clarified the law for Juror 52. After such clarification, Juror 52 confirmed that she understood that "if the[ prosecutors] c[ould]n't prove what they've alleged, then the[ defense was] entitled to have the [d]efendant found not guilty." Ho gave no indication that the trial court had misunderstood her reference to "elements," nor did she request any additional questioning of Juror 52. And soon thereafter, the trial court ruled that the "challenge to Juror Number 52 [wa]s denied."

Consequently, Ho proceeded to use preemptory challenges to remove Jurors 2 and 52, she exhausted her remaining preemptory strikes, she requested additional

---

[5]Ho noted that Juror 52 had stated that she had "helped [her] dad at [a] law office in California, and [they] thought the cop was planting evidence."

preemptory strikes to compensate, and when her request was denied, she identified two other objectionable venireman whom she would have struck had Jurors 2 and 52 been removed for cause. *See Hudson v. State*, 620 S.W.3d 726, 729–30 (Tex. Crim. App. 2021) (listing steps required to demonstrate harm from denied challenge for cause, including "us[ing] a peremptory challenge on the complained-of member[,] . . . exhaust[ing] all remaining peremptory challenges," requesting "an additional strike . . . to make up for the one that was wrongly denied," and "identify[ing] on the record the objectionable juror whom [s]he would have removed with the additional strike").

## B. Jury Charge

Once the jury was selected, it heard evidence for almost two weeks before receiving the jury charge. In the charge, each of Ho's action-based offenses—capital murder and four counts of action-based injury to a child—authorized her conviction as a party to Boyfriend's actions. And in each instance, one of the submitted theories of party liability was premised on Ho's legal duty to intervene.[6]

For the four counts of action-based injury to a child, the jury was authorized to convict Ho if it found that she, "having a legal duty to prevent the commission of the offense and acting with intent to promote or assist its commission, failed to make a reasonable effort to prevent [Boyfriend] from intentionally or knowingly causing

---

[6]The charge included other theories of party liability as well, but those theories are not relevant to the issues presented on appeal.

6

bodily injury [or serious bodily injury, depending on the count] to [Son]." And for capital murder, the jury was authorized to convict if it found that Ho, "having a legal duty to prevent the commission of the offense and acting with intent to promote or assist its commission, failed to make a reasonable effort to prevent [Boyfriend] from intentionally or knowingly causing the death of [Son]."

## C. Verdict and Judgment

The jury found Ho guilty of all seven offenses, and after hearing punishment evidence, it assessed the maximum fine and term of confinement for Ho's crimes. *See* Tex. Penal Code Ann. §§ 19.03(a)(8), 22.04(a)(1), (a)(3). The trial court entered judgment accordingly, sentencing Ho to confinement for life without the possibility of parole.[7] *See id.* §§ 12.31(a)(2), (b)(2), 12.32, 12.34.

## II. Discussion

Ho raises three appellate complaints: (1) the trial court's denial of her challenges to Jurors 2 and 52; (2) the jury charge's inclusion of duty-based theories of

---

[7]One of Ho's crimes was a capital felony, *see id.* § 19.03(a)(8), (b); two were first-degree felonies, *see id.* § 22.04(a)(1), (e); and the remaining four were third-degree felonies, *see id.* § 22.04(a)(3), (f). Ho received an automatic life sentence for the capital felony, *see id.* § 12.31(a)(2), (b)(2); and the jury assessed her punishment at life in prison and a $10,000 fine for each of the first-degree felonies, *see id.* § 12.32; and ten years in prison and a $10,000 fine for each of the third-degree felonies, *see id.* § 12.34.

liability for her action-based offenses; and (3) the violation of her double jeopardy rights.[8]

## A. Challenges for Cause

First, Ho complains of the trial court's denial of her challenges for cause to Jurors 2 and 52.

### 1. Standard of Review

A venireman is challengeable for cause if he has a bias against the law that would substantially impair his ability to carry out his duties in accordance with his oath and the court's instructions. *Hudson*, 620 S.W.3d at 731; *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014). Before a trial court grants such a challenge, the venireman must be shown to have understood the law but be unable or unwilling to follow it. *Comeaux*, 445 S.W.3d at 749; *Minze v. State*, No. 02-15-00352-CR, 2016 WL 4474352, at *2 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication).

We review the trial court's denial of a challenge for cause for an abuse of discretion. *Hudson*, 620 S.W.3d at 731. Because the trial court "is best placed to judge a venire[man's] demeanor and tone of voice," the court is afforded "considerable deference"—particularly when a venireman's "answers are vacillating" or equivocal. *Id.*; *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010); *Moore v. State*, No. 02-

---

[8]Ho structures her three complaints as five issues, but we have grouped and reordered those issues for organizational purposes.

23-00152-CR, 2025 WL 353068, at *2 (Tex. App.—Fort Worth Jan. 30, 2025, no pet.) (mem. op., not designated for publication); *Minze*, 2016 WL 4474352, at *2–3.

If a venireman demonstrates bias but the trial court refuses to remove him for cause, then the error is harmful if it wrongfully deprives the defendant of a peremptory strike. *Hudson*, 620 S.W.3d at 729 (explaining that "[h]arm from the erroneous denial of a defense challenge for cause focuses on whether a peremptory challenge was wrongfully taken from the defendant" (quoting *Newbury v. State*, 135 S.W.3d 22, 30 (Tex. Crim. App. 2004))); *Comeaux*, 445 S.W.3d at 749–50. To prove such harm, the defendant must, among other things, have clearly and specifically challenged the venireman in the trial court.[9] *Hudson*, 620 S.W.3d at 729–30 (noting that these steps have "sometimes [been] called necessary for preservation [but] are really to show harm"); *Comeaux*, 445 S.W.3d at 749–50.

### 2. Juror 2

Regarding Juror 2, Ho argues that, because he stated at one point that he could not consider giving the minimum five-year sentence for murder, he was biased as a matter of law, and the trial court should have excluded him for cause. *See Cardenas v. State*, 325 S.W.3d 179, 185 (Tex. Crim. App. 2010) ("A juror who states that he cannot consider the minimum punishment for a particular statutory offense is subject to a

---

[9]In addition, the defendant must use a peremptory strike on the complained-of venireman, exhaust all remaining peremptory strikes, ask for an additional strike, and identify the objectionable venireman whom she would have removed with the additional strike. *Hudson*, 620 S.W.3d at 729–30.

challenge for cause."). But even if we assume that Ho adequately raised this challenge for cause in the trial court,[10] Juror 2 did not unequivocally demonstrate bias; he gave contradictory responses.

Indeed, Ho's trial counsel, when he identified Juror 2 for individual questioning, acknowledged that Juror 2 had "vacillat[ed]" in his responses to whether he could consider the full punishment range for murder. And when Juror 2 was individually questioned on the topic and the law was explained to him, he confirmed that, "if it's [i.e., the full punishment range of five years to life is] what the law states then . . . I will render an opinion accordingly." When, as here, a venireman's answers are vacillating or equivocal, we must defer to the trial court's evaluation of that venireman. *See Hudson*, 620 S.W.3d at 734 (holding trial court did not abuse discretion by denying challenge for cause and explaining that, "[a]t most, [the challenged venireman's] answers were vacillating or contradictory[, and i]n such circumstances, we defer to the trial court's decision"); *Minze*, 2016 WL 4474352, at *3 (holding trial

_____

[10]Arguably, Ho did not raise any clear or specific challenges for cause at all. While the record contains rulings after each venireman's individual questioning—e.g., that "Number 2 is staying" and that the "challenge to Juror Number 52 is denied"— these rulings do not appear to be in response to any challenges for cause. Ho implies that she raised her challenges by identifying veniremen for individual questioning, but the record does not indicate that her request that the veniremen be added to a callback list included a challenge for cause, much less a clear and specific one. And although Ho attempted to lodge objections to Jurors 2 and 52 after their individual questioning had concluded, she was interrupted with a ruling before she could finish vocalizing the nature of or basis for her objections. So when, at the end of voir dire, Ho referenced her "two . . . challenges for cause [having been] denied on 2 and 52," no such challenges had been recorded.

10

court did not abuse discretion by denying challenge for cause and explaining that because prospective juror's "answers were equivocal, we defer to the trial court's decision"). After applying the proper deference, we hold that the trial court was within its discretion to deny Ho's challenge to Juror 2.

### 3.    Juror 52

As for Juror 52, Ho claims on appeal that she "unequivocally stated she may not require proof beyond a reasonable doubt." But even if we assume that Juror 52 made such a statement, Ho cannot show harm because she did not clearly and specifically make this challenge before the trial court.

During voir dire, Ho expressed concern regarding three of Juror 52's responses: Juror 52's discussion of her work at her father's law practice; her punishment response; and her "elements," i.e., unknown-object, response. At no point did Ho claim that Juror 52 could not uphold the beyond-a-reasonable-doubt standard.

And to the extent that Ho now claims her "elements" concern was a reference to the beyond-a-reasonable-doubt standard, such cryptic shorthand was insufficiently clear or specific to alert the trial court to that fact. *See* Tex. R. App. P. 33.1(a)(1). The trial court individually questioned Juror 52 on each of Ho's areas of concern, and as Ho acknowledges, Juror 52 "was not asked about her requirement of proof beyond a reasonable doubt." The absence of questions on this topic reflects Ho's failure to make the trial court aware of it. Thus, even if we assume that Juror 52 was

11

challengeable for cause on this basis, because Ho did not raise it in a clear and specific objection, she cannot show that it resulted in the wrongful denial of a preemptory challenge. *See Hudson*, 620 S.W.3d at 729–30 (clarifying that "[h]arm from the erroneous denial of a defense challenge for cause focuses on whether a peremptory challenge was wrongfully taken from the defendant" (quoting *Newbury*, 135 S.W.3d at 30)).

Thus, we overrule Ho's two issues regarding her challenges for cause.

## B.    Jury Charge

In her next two issues, Ho argues that the jury charge erroneously included unindicted duty-based theories of liability for her five action-based offenses.[11] According to Ho, because the duty-based theories of liability involved her failures to act, they were pure crimes of omission, which were distinct from the action-based offenses charged in the indictment. Ho thus reasons that the jury charge authorized her conviction for distinct, unindicted crimes of omission. And, she continues, this was particularly problematic when it came to capital murder because the statutory

---

[11]Ho does not dispute that, as Son's mother, she owed him a legal duty. *See* Tex. Fam. Code Ann. § 151.001(a)(2) (codifying parent's "duty of care, control, [and] protection . . . of [her] child"); *Botello v. State*, Nos. 02-18-00362-CR, 02-18-00363-CR, 2019 WL 5608243, at *17 (Tex. App.—Fort Worth Oct. 31, 2019, no pet.) (mem. op., not designated for publication) (recognizing that "a mother has legal obligations, among others, to protect her children and to provide them with medical care").

12

definition of the offense requires an act rather than an omission.[12]  But as the State points out, Ho confuses a duty-based theory of party liability with a distinct, pure crime of omission.

Under a duty-based theory of party liability, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, [s]he fails to make a reasonable effort to prevent commission of the offense."  Tex. Penal Code Ann. § 7.02(a)(3).  In such instances, because the underlying offense is "committed by the conduct of another," it is generally—as here—action-based.  *Id.*  Put differently, the proscribed result is causally linked to the conduct of the other rather than to the party's "fail[ure] to make a reasonable effort." *Id.*; *cf. Cyr v. State*, 665 S.W.3d 551, 565 n.6 (Tex. Crim. App. 2022) (Yeary, J., dissenting) (distinguishing between "criminal responsibility by concurrent cause involving [a crime of] omission [and] criminal responsibility as a party" to another person's crime by explaining that "criminal responsibility as a party . . . does not implicate 'another cause' for a proscribed result").

In this way, duty-based party liability is in contrast to a pure crime of omission, such as injuring a child by omission.  A person injures a child by omission if she

---

[12]Ho reads more into the charge's duty-based language as well, arguing that, because the charge authorized her conviction for capital murder based on a failure to act, it implicitly authorized such conviction based on a mens rea of recklessness.  But the duty-based language in the charge makes no mention of recklessness.

13

"intentionally, knowingly, or recklessly by omission, causes to a child . . . bodily injury" when she "ha[s] a legal or statutory duty to act." Tex. Penal Code Ann. § 22.04(a), (b)(1). This crime need not involve any "conduct of another," and it requires a causative link between the defendant's "failure to act" and the child's injury. *Id.* §§ 1.07(34), 7.02(a)(3); *cf. Cyr*, 665 S.W.3d at 565 n.6 (Yeary, J., dissenting) (noting that a pure crime of omission, in contrast to party responsibility, "regards [the] 'omission' as a 'cause' of the proscribed result").

Here, the jury charge authorized Ho's conviction for each of the four counts of action-based injury to a child if Ho, "having a legal duty to prevent the commission of the offense and acting with intent to promote or assist its commission, failed to make a reasonable effort to prevent [Boyfriend] from . . . causing bodily injury [or serious bodily injury] to [Son]." This tracked the statutory language for duty-based party liability, making Ho responsible for Boyfriend's action-based crimes and for the injuries he caused to Son. *See* Tex. Penal Code Ann. § 7.02(a)(3) (holding a person criminally responsible for another's conduct if "having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, [s]he fails to make a reasonable effort to prevent commission of the offense"). The same was true for the capital murder portion of the jury charge; it tracked the statutory language for duty-based party liability by authorizing Ho's conviction if she, "having a legal duty to prevent the [murder] and acting with intent to promote or

14

assist its commission, failed to make a reasonable effort to prevent [Boyfriend] from . . . causing the death of [Son]." *See id.*

Contrary to Ho's contentions, then, the jury charge did not authorize her conviction for unindicted crimes of omission, nor did it allege capital murder by omission. *Cf. Botello*, 2019 WL 5608243, at *17–19 (holding evidence sufficient to support mother's capital murder conviction under legal-duty theory of party liability). Rather, it authorized her conviction as a party to Boyfriend's action-based crimes. And when "the evidence supports a charge on the law of parties"—something Ho does not dispute—"the [trial] court may charge on the law of parties even [if] there is no such allegation in the indictment." *Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978); *see Marable v. State*, 85 S.W.3d 287 & n.2 (Tex. Crim. App. 2002) (describing rule as "well-settled" and collecting cases).

We overrule Ho's complaints regarding the charge's inclusion of duty-based theories of party liability.

## C.    Double Jeopardy

In her final issue, Ho argues that the allegations underlying two of her convictions for action-based injury to a child overlap with those underlying her conviction for capital murder. Thus, she reasons, the convictions punish her multiple times for the same offense in violation of Texas's Double Jeopardy Clause. *See* Tex.

15

Const. art. I, § 14 ("No person, for the same offence, shall be twice put in jeopardy of life or liberty . . . .").[13]

But even assuming the alleged overlap exists,[14] it does not violate the Double Jeopardy Clause. While the Double Jeopardy Clause protects a defendant from multiple punishments for the same offense, *see id.*, it "is not violated if the legislature intended to authorize multiple punishments." *Thetford v. State*, No. 02-18-00488-CR, 2021 WL 278913, at \*12 (Tex. App.—Fort Worth Jan. 28, 2021) (mem. op., not designated for publication), *rev'd in part on other grounds*, No. PD-0258-21, 2021 WL 2674484 (Tex. Crim. App. June 30, 2021) (not designated for publication); *see Villanueva v. State*, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007) (clarifying that "[t]he ultimate inquiry is simply whether the [l]egislature intended that the defendant suffer more than one punishment"). And the legislature did so here.

The Penal Code provision criminalizing injury to a child states that "[a] person who is subject to prosecution under both this section [i.e., for injury to a child] and

---

[13]"Conceptually, the state and federal constitutional [double jeopardy] provisions are identical." *Phillips v. State*, 787 S.W.2d 391, 393 n.2 (Tex. Crim. App. 1990) (noting as much in multiple-punishments context); *see Lopez v. State*, 80 S.W.3d 624, 627 (Tex. App.—Fort Worth 2002) (similar), *aff'd*, 108 S.W.3d 293 (Tex. Crim. App. 2003); *see also Ex parte Mitchell*, 977 S.W.2d 575, 580–81 (Tex. Crim. App. 1997) (citing *Phillips* and recognizing same in multiple-prosecutions context). Therefore, although Ho relies solely on the Texas Constitution for her double jeopardy complaint, we reference case law applying the federal double jeopardy provision as well.

[14]The State denies the alleged overlap, arguing that the three relevant offenses are based on different injuries.

another section of th[e Penal C]ode may be prosecuted under either or both sections." Tex. Penal Code Ann. § 22.04(h). "This statute has been cited by the Court of Criminal Appeals as an example of the legislature 'plainly express[ing] its intention that an accused should suffer multiple punishments for the same offense.'" *Thetford*, 2021 WL 278913, at \*12 (quoting *Littrell v. State*, 271 S.W.3d 273, 278 (Tex. Crim. App. 2008)). Thus, even if Ho's convictions for action-based injury to a child punish her for the same offense as her capital murder conviction, the overlap does not violate Texas's Double Jeopardy Clause. *See id.* (overruling double jeopardy challenge to convictions for attempted murder and injury to a child); *Desormeaux v. State*, 362 S.W.3d 233, 236–37 (Tex. App.—Beaumont 2012, no pet.) (overruling double jeopardy challenge to convictions for capital murder and injury to a child).

We overrule this issue.

## III. Conclusion

Having overruled all of Ho's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 24, 2025

17